### UNITED STATES of America
### v.
### Carlos MARCELLO.
### Crim. No. 19234.

United States District Court
E. D. Louisiana,
New Orleans Division.
Oct. 31, 1962.

Louis C. LaCour, U. S. Atty., Peter E. Duffy, Asst. U. S. Atty., New Orleans, La., Edward Molenof, John E. Sprizzo, Michael S. Fawer, Attys., Dept. of Justice, Washington, D. C., for the United States.

Jack Wasserman, Washington, D. C., Michel A. Maroun, Shreveport, La., G. Wray Gill, New Orleans, La., for Carlos Marcello.

AINSWORTH, District Judge.

This is a petition for relief in the nature of a writ of error coram nobis filed September 25, 1961, by Carlos Marcello, who seeks to set aside a judgment of conviction on his plea of guilty which was entered on October 29, 1938 (nearly 23 years before) to a charge of violating the Marihuana Tax Act of 1937, 26 U.S.C.A. § 4741 et seq. Marcello contends that on the day of the conviction on his guilty plea he was not represented by counsel and did not waive counsel, in violation of his rights under the Sixth Amendment. He was sentenced to serve a year and a day and the full term of the sentence has long since been served.

Our former opinion in this matter ordering a hearing on the petition is reported in D.C., 202 F.Supp. 694. The present petition has significance because Marcello is awaiting deportation as an undesirable alien, the deportation order having been rendered following a prolonged legal battle beginning in 1952, having been initiated under provisions of the McCarran-Walter Act, 8 U.S.C.A. § 1251(a) (11). Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). The deportation order of the Board of Immigration Appeals dated December 8, 1961, is based on the 1938 marihuana conviction. If the conviction is set aside, the deportation order also must necessarily fall. The United States denied the allegations of the petitioner

and averred that petitioner was represented by Warren O. Coleman, attorney, at the time of the plea of guilty. Hearings were held by the court without a jury on June 13, 14, 15 and 27, 1962. Final reply briefs were filed October 2, 1962.

The sequence of events pertaining to the present case follows:

On March 28, 1938, Marcello was arrested on the marihuana violation, and appeared with Fred Middleton, attorney, as his counsel before the United States Commissioner. On April 25, 1938, he was indicted by the Grand Jury on these charges for violation of the Marihuana Tax Act of 1937, the indictment specifying that he transferred 63½ ounces of marihuana to Gilmore Failor (a federal narcotics agent) on December 6, 1937, and 316½ ounces to the Government agent on December 15, 1937. J. Skelly Wright, Assistant District Attorney, signed the original indictment. On May 2, 1938, Marcello pleaded not guilty, appearing with W. O. Coleman, attorney, as his counsel. The case was called on June 6, 1938, and continued indefinitely at the request of Assistant United States Attorney J. Skelly Wright. On Saturday morning, October 29, 1938, Marcello appeared before Circuit Judge Rufus E. Foster, sitting in the district court, changed his plea of not guilty, entered a plea of guilty and was sentenced to serve a year and a day on the charges. The judgment and commitment signed by Judge Foster on the date of sentence recites that the defendant Marcello appeared in person and by counsel, without naming his attorney.[1] The minute entry of the court likewise shows that defendant Marcello appeared with counsel and named Warren O. Coleman as his attorney.[2] Judge Foster, Federal Narcotics Agent Failor, W. O. Coleman, attorney, and the Clerk of Court Henry J. Carter are now deceased; no stenographic transcript or recording of the proceedings was made and none is available.

The sole issue involved is whether, on October 29, 1938, when Marcello pleaded guilty, he was represented by counsel or he competently and intelligently waived

---

1. The judgment and commitment referred to reads in part as follows:
 "On this 29th day of October, 1938, came the United States Attorney, and the defendant Carlos Marcello appearing in proper person, and by counsel * * *."

2. The minute entry reads as follows:
 "October 29th, 1938. MAY TERM, 1938.
 "New Orleans, Saturday, October 29th, 1938.
 "Court met pursuant to adjournment;
 "Present: Hon. RUFUS E. FOSTER, Judge.

 "No. 19,234
 "UNITED STATES OF AMERICA
 vs.
 CARLOS MARCELLO

 "Carlos Marcello, defendant herein, this day appeared in open Court, and thru his counsel of record Warren O. Coleman, Esq., asked leave of the Court to withdraw his plea of 'Not Guilty' heretofore entered to the Indictment, in the above entitled cause on May 2nd, 1938, which leave was granted by the Court.
 "Thereupon the said defendant withdrew his former plea of 'Not Guilty', and pleaded 'Guilty' to the Indictment found and presented against him for violation of the Marihuana Tax Act of 1937.
 "Whereupon, it is ordered by the Court that his said plea of 'Guilty' be recorded, and it is done accordingly."

counsel. If not, his conviction must be set aside in these coram nobis proceedings even though the sentence has already been served.

■■ Coram nobis is available to petitioner as a result of the All Writs Section, 28 U.S.C.A. § 1651(a), though such writs were abolished by Rule 60(b) of the Federal Rules of Civil Procedure. This was the holding of the Supreme Court in the leading case of United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), and was the basis on which we ordered a hearing in the present case. However, this decision cautioned us that this extraordinary remedy should be allowed only under circumstances compelling such action to achieve justice where a judgment is final and defendant did not exercise but waived his right of review.

■ In 1938, the Supreme Court handed down its now celebrated decision in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), which held that in all criminal proceedings in federal courts the Sixth Amendment requires that an accused cannot be deprived of his life or liberty unless he has or waives the assistance of counsel. However, the court pointed out in Zerbst that a judgment cannot be lightly set aside by collateral attack and when so attacked the judgment of the court carries with it a presumption of regularity. A presumption of regularity attends the judgment of the court when a collateral attack is made upon it, McKinney v. United States, 93 U.S.App.D.C. 222, 208 F.2d 844 (1953), and a heavy burden of proof is cast upon petitioner when he attempts to overcome the presumption of regularity of the judgment of conviction where he faces a deportation as a result of the judgment. United States v. Castelli, No. 46,369, S.D.N.Y., November 3, 1961, aff'd per curiam 306 F.2d 640 (2 Cir., 1962).

In Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942), the Supreme Court said:

"If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality."

■■ Petitioner must overcome the presumption of regularity that judges obey the law and will protect fully the rights of persons appearing before them and that judicial proceedings have conformed with due process of law. White v. Reid, D.C., 126 F.Supp. 867 (1954). Petitioner therefore has a severe burden of proof in this case to rebut if he can the strong presumption of regularity of judicial proceedings and judgments rendered therein. Though laches is not available to the United States as a defense to this petition, nevertheless petitioner's quantum of required proof is affected and magnified by the lapse of time as well as the good faith and credibility of the moving party. United States v. Wiggins, 184 F.Supp. 673, D.D.C. (1960); Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582 (1955), reversed on other grounds, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).

To support his petition, Marcello offered his own testimony and that of three other persons said to have been in court at the time of his plea of guilty. The Government countered with its offer of the judgment and commitment, court's minute entry, the parole report prepared contemporaneously by then Assistant United States Attorney, now Judge J. Skelly Wright, and the testimony of Judge Wright and Judge Herbert W. Christenberry, Chief Judge of this court (then First Assistant United States Attorney).

Marcello testified that he was represented by Fred Middleton, attorney, at the Commissioner hearing on March 30, 1938, following his arrest on the marihuana charges. After he was indicted he appeared in court on May 2, 1938, for arraignment, accompanied by W. O. Coleman as his counsel, who entered a plea

of not guilty for him. He stated that he did not see or communicate again with Attorney Coleman; that he had no funds to fight the narcotics charge and his family had no funds to assist him. He said that an uncle, Frank Tadaro, made arrangements for him to plead guilty stating that he would get less than a year's sentence; that he told his uncle that he would plead guilty, which he did on October 29, 1938. He said he was accompanied to the court by his brother-in-law Louis Badalamenti and Jerry Wood, a friend. He said that he appeared without counsel on that date before Judge Rufus E. Foster; that Assistant United States Attorney J. Skelly Wright came forward with him and some records and upon Judge Foster asking the defendant how he would plead, he entered a plea of guilty and was sentenced to a year and a day. He testified that he had no attorney and was not advised by the Judge that he could have an attorney; that he saw no reason to hire an attorney since he was going into court to plead guilty and he did not care whether he had an attorney or not, for he felt there was no useful purpose to get a lawyer when he was going to plead guilty.

Petitioner was previously convicted in 1938 on a charge of assault and robbery in a Louisiana state court and received a sentence of 9–14 years. He served a portion of the sentence and was ultimately pardoned for the offense. He awaits deportation now on account of the marihuana conviction involved in the present case. Obviously he has much to gain by the annulling of this conviction, for he would thereby avoid deportation. We have discretion to determine how much weight shall be accorded the obvious self-interest of petitioner for his motivation is undoubtedly very great. Likewise, it is for us to determine the extent his previous conviction in the state court shall be weighed against him. Although petitioner disclaims any connection with his counsel W. O. Coleman after the date of the arraignment and plea of not guilty on May 2, 1938, this lawyer's firm of Habans and Coleman was counsel for petitioner shortly thereafter in a tax case, having been employed by petitioner's wife while he was still incarcerated in the Atlanta Penitentiary. The signature of Warren O. Coleman, Notary Public, is shown on the petition attesting that of Mrs. Marcello on behalf of her husband. The evidence shows that petitioner made no complaint about his sentence either at the time it was made, subsequently upon admission to Atlanta, on his discharge from the penitentiary, to the probation officer or to anyone else. In the state court prosecution and subsequent petitions to the State Pardon Board for a pardon from the state conviction (all prior to the marihuana conviction) he was invariably represented by counsel. Not even after 1952, when immigration proceedings were instituted for his deportation under the McCarran-Walter Act, did he assert that he was deprived of counsel and did not appear with counsel at the time he pled guilty to the marihuana charge. It was not until September 1961 when the coram nobis petition was filed that we first learned that petitioner contends he was deprived of constitutional rights at the time of his sentence. "The long period of uninterrupted silence concerning his after-discovered injury negatives its existence." United States v. Simone, 205 F.2d 480 (2 Cir., 1953); Glasser v. United States, 315 U.S. 60, 91, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

To support his testimony petitioner also produced the former United States Probation Officer Seidler attached to this court at the time of petitioner's sentence and subsequent probation. Seidler said he did not know Marcello prior to the time of his plea of guilty and sentence; in fact, he did not even know his name until afterwards. He stated that he was in the courtroom on the day of plea and sentence and that Attorney Coleman was not present with petitioner. He found it unusual that the defendant was sentenced without being advised of his right to counsel. Many other details of this courtroom scene which occurred nearly 24 years ago are lost in the witness's memory. We find it incredible that the de-

tails of purported absence of counsel are so well remembered when others attendant thereto are forgotten. The witness handled hundreds of cases in his official position, had no reason to be particularly interested in petitioner's case. He was so vague in his recollection of the courtroom events of that day that he testified that he did not know if there were lawyers at the counsel table. He said there were only two men at the bar, Marcello and Assistant United States Attorney Wright, but there were some other people around as well as a couple of people sitting at the counsel table. He did not know if any of these people was a criminal lawyer. He said he did know that Attorney Coleman was not there but said that there may have been someone else representing the defendant, he did not know. He had only vague memory of his supervision of Marcello on probation after his release from the penitentiary. We cannot accept as true this attempted recollection of events of nearly a quarter of a century ago, when other important details attending the day of the guilty plea and subsequent parole supervision are completely lacking.

Another witness, Jerry Wood, convicted in 1936 and sentenced to a term of three years for violation of the Internal Revenue laws and convicted in 1946 for an OPA violation for which he was fined, testified that he was in court at the time of petitioner's plea of guilty and that though he knew Attorney Coleman, the attorney was not present. Though Wood's prior convictions are somewhat remote, we must consider them in weighing the effect they have upon the credibility of his testimony. He was generally vague and indefinite about what happened in the courtroom on the day of sentence, though he said he did not hear Judge Foster advise Marcello of his legal rights. He said he did not see Attorney Coleman but Coleman could have been there. He didn't know, he only knew that he did not see him. He saw some people standing around Marcello at the time of sentence but he didn't know who they were. The unsatisfactory nature of this testimony is apparent.

Petitioner's brother-in-law testified that he was also in court at the time of plea and sentence; that he did not know Attorney Coleman and did not see him or any attorney appearing with petitioner at the time. This witness was very confused and mixed up. His recollection was extremely vague and we find no corroboration or support for petitioner in the vague generalities to which he testified.

The United States contends that petitioner's witnesses did not rebut the strong presumption of regularity of the judgment of conviction. It produced the judgment dated October 29, 1938, signed by Judge Foster,[3] which showed that counsel for defendant Marcello was present, though it did not name him, and the minute entry of the court which showed that counsel for defendant was present, naming Warren O. Coleman as attorney.

United States Circuit Judge J. Skelly Wright of the District of Columbia Circuit, former district judge of this court for 13 years and formerly Assistant United States Attorney, testified that he had no independent recollection of the Marcello plea and conviction on October 29, 1938, though it is undisputed that he handled the case and was in court on the day of sentence. The day in question was Saturday on which at that time the Unit-

---

3. The judgment and commitment dated October 29, 1938, was signed by the late Circuit Judge Rufus E. Foster. The strong presumption of regularity is even more apparent now, 24 years later, for we must presume that Judge Foster would not have signed the judgment and commitment stating that Marcello appeared "by counsel" had this not in fact occurred. Judge Foster, of course, is not available as a witness, having died many years ago. It is hardly believable that Judge Foster would have signed the judgment and commitment with an erroneous statement that Marcello appeared "by counsel" had this not been true. Judge Foster undoubtedly would have required that the judgment be changed before signing it had it not recited the true facts which existed at the time of Marcello's plea of guilty.

ed States Attorney's office was then open for a half day. Judge Wright was assigned to the narcotics docket and handled all of such cases. Judge Wright identified the Report on Convicted Prisoner by United States Attorney on Marcello dated October 29, 1938, and bearing Wright's signature and prepared by him, which was sent to the Warden of Atlanta Penitentiary. The report is a routine one, on a Government form, and indicates that the defendant's attorney on the day of plea and sentence was Warren O. Coleman. The Judge testified therefore that the defendant was represented by Warren O. Coleman; that had he not been so represented at the time of his plea of guilty and sentence on October 29, 1938, the parole report would not have so indicated but that portion of the printed form would have been left blank. Judge Wright said he dictated the report on October 29, 1938, after Marcello was sentenced. He also identified the original judgment and commitment and said that the practice of the United States Attorney's office at the time was for the Assistant United States Attorney who handled the case to prepare the judgment and commitment and send it to the Clerk's office in order to have it signed by the Judge. He said therefore that the judgment and commitment was prepared by him and that before its submission to the Clerk's office it was examined by him. He said that the judgment and commitment shows that defendant was represented by counsel at the time of his sentence and had Marcello not been so represented he would not have filled in the form of judgment and commitment showing this fact. Judge Wright further said that had Marcello not had a lawyer in court on that date he would have followed the Department of Justice's instructions as set forth in its circulars relative to providing counsel for the defendant. His invariable practice in the United States Attorney's office was never to prepare an order of judgment and commitment prior to the date the person was sentenced and he said he would have had to have knowledge of the facts to have filled out the parole report and the judgment and commitment, both of which state that Marcello had counsel.

Corroborating Judge Wright was Chief Judge Herbert W. Christenberry of this court, who has been a judge in this district since 1947 and who was First Assistant United States Attorney in 1938. He said that he was familiar with the preparation of parole reports and orders of judgment and commitment and that the practice in 1938 was that these reports were prepared in the United States Attorney's office, dictated to a stenographer, and examined after dictation. He identified the Marcello parole report and said that if an individual was represented by counsel at the time of sentence a notation to that effect was made on the form as a routine matter. He also identified the judgment and commitment form which he stated was prepared by the United States Attorney's office but never prior to the sentencing; that if a defendant had not been represented by counsel at the time of sentencing and had waived counsel, such a fact would appear on the judgment and commitment as would the fact that counsel was present. The practice was to prepare the judgment of conviction immediately after the Assistant United States Attorney came out of court. He said the practice of waiving the right to counsel was the same in 1938 as now. Defendants were told by the United States Attorney orally that they had a right to have counsel to represent them, and if they were not able to employ counsel, the court would appoint one to represent them. If a defendant said he wanted counsel to represent him, the matter was continued until counsel could be appointed. But if counsel was waived, arraignment would be proceeded with immediately. Later the further practice of having a signed written waiver was begun, which is the procedure now. He said that when a defendant was represented by a lawyer and pleaded not guilty and then came in later and changed his plea to guilty, his lawyer was always with him; otherwise, the Judge would not have imposed sentence. This was

the routine in such a situation. He had not had proceedings before Judge Foster and he could only state what the procedure was so far as the United States Attorney's office was concerned. That is, if a defendant had a lawyer with him when he entered a plea of not guilty, and then came in later and changed his plea to guilty, his lawyer would be expected to be with him.

Judge Wright, who is still one of the younger federal judges and who has had long experience as a judge and United States Attorney, was unable to recall by independent recollection any of the things which transpired on October 29, 1938, when the defendant pled guilty and was sentenced. But his testimony is clear that he was in charge of all narcotics prosecutions; that he was familiar with the instructions of the Department of Justice in connection with the necessity of having counsel for a defendant or an intelligent waiver of counsel; and that he prepared the Marcello parole report which bears his signature and which, with his testimony as to the practice of the office, conclusively shows that Warren O. Coleman was present with Marcello as his counsel at the time of sentence. Petitioner contends that the parole form merely lists Mr. Coleman as defense attorney and does not state that he was present at the time. We find no merit to this contention because Judge Wright testified that he would not have filled in Mr. Coleman's name as defense attorney had he not been personally present. The judgment and commitment likewise shows that the defendant Marcello appeared by counsel, and Judge Wright, as part of his duties in the usual practice of his office, must have prepared this judgment. We believe from the evidence that he did and that he would not have filled in the words "by counsel" had Marcello not had counsel present with him at the time of his plea and sentence. Judge Christenberry is equally positive about the practice of the preparation in the United States Attorney's office of parole reports, including the filling in of defense counsel's name if present at the time of sentence, and preparation of judgment and commitment forms where appearance of counsel is noted if present. Likewise, it is certain from Judge Christenberry's testimony that the practice of appointing counsel in 1938 was no different then than now except that where counsel is waived a written waiver is obtained from the defendant. We can only conclude that it was the invariable practice then as now to advise a defendant of his constitutional rights to counsel and that had no counsel been present the plea of guilty would not have been accepted and sentence imposed.

■ It was proper for the court to receive the testimony of Judges Wright and Christenberry as to the general practice of this court in connection with all defendants in criminal cases either having or waiving counsel. Though Judge Wright who handled the case could actually recall nothing of the occasion, he nevertheless prepared the records in the case, one of which bears his signature, and the general practice of making such records and the usual habit of the Assistant United States Attorney in respect thereto is properly considered by us. 3 Wigmore, Evidence, § 747, p. 82 (3d Ed. 1940).

■ Petitioner having undertaken a heavy burden to overcome the strong presumption of regularity of the judgment of conviction has failed in his proof. The evidence of the United States strongly supports the fact that petitioner at the time of his plea of guilty and sentence was accompanied by his counsel, the late Warren O. Coleman. See also the following cases where similar petitions were denied because the presumption of regularity of the judgment was not overcome, there being evidence to support their denial: United States v. Embarrato, 253 F.2d 947 (2 Cir., 1958); United States v. Di Martini, 219 F.2d 807 (2 Cir., 1955); United States v. Russell, 146 F.Supp. 102, S.D.N.Y. (1955); United States v. Kline, 98 F.Supp. 325, E.D.N.Y. (1951).

The foregoing shall constitute Findings of Fact and Conclusions of Law. Decree accordingly.