Richard Allen TANNER, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 338–70.

United States Court of Appeals, Tenth Circuit.

Nov. 13, 1970.

John R. Stallings, Wichita, Kan., for petitioner-appellant.

Richard L. Meyer, Asst. U. S. Atty., Topeka, Kan., Robert J. Roth, U. S. Atty., Wichita, Kan., on the brief, for respondent-appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

On September 26, 1962, Tanner pleaded guilty to a Dyer Act violation, 18 U. S.C. § 2312. While awaiting sentencing on this plea, he escaped from jail. He was subsequently apprehended and on October 25, 1962, he was arraigned on the escape charge, 18 U.S.C. § 751, and on the following day, with appointed counsel present, he pleaded guilty to that charge. After reviewing a pre-sentence report on the defendant, the trial court sentenced Tanner to five years on each charge, to be served consecutively. Now, by a motion made pursuant to 28 U.S.C. § 2255, Tanner asserts that at the time he pleaded guilty to the Dyer Act charge he was mentally incompetent. An evidentiary hearing was conducted, after which the district court concluded that the failure to afford Tanner a hear-ing under 18 U.S.C. § 4244, in 1962, was not a denial of due process. Further-more, upon the evidence adduced in the 1970 hearing, the court retrospectively determined that Tanner was mentally competent to stand trial in 1962.

The thrust of appellant's argument is that because of facts known by the Unit-ed States Attorney and the district court at sentencing time, one or the other ought to have moved for an 18 U.S.C. § 4244 examination. The operative facts allegedly sustaining the contention are these. Prior to either plea, the prosecu-tor was made aware that only shortly before the August, 1962, arrest, Tanner had escaped from an Oklahoma mental institution. Even though the United States Attorney called the institution to inquire whether a finding of mental in-competence had been made—which was answered in the negative—appellant argues this to be inadequate to dis-charge the duty of a prosecutor under section 4244.

It is also urged that the trial court knew of the prior confinement in a men-tal hospital. The pre-sentence report in-dicated that while Tanner was incarcer-ated in an Oklahoma jail he inflicted a wound in his own arm which required medical attention. Not long after that, he again slashed his arm and had to be removed to a local hospital for treat-ment. Apparently the second incident prompted officials to remove the prison-er to the State Hospital at Vinita, Okla-homa. Regarding these incidents, the pre-sentence report concluded: "Defend-ant has attempted suicide by slashing his wrists. It has not been determined whether this is real or an episode to at-tract attention." This was the only evi-dence before the trial court which indi-cated that the defendant was or might have been incompetent to waive his con-stitutional rights.

First, we do not agree that the United States Attorney was provided information which required him to move for a 4244 examination. Upon being in-formed that the defendant was an es-capee from an Oklahoma State Hospital,

the prosecutor called the institution to inquire whether a mental determination had been made by them. According to the prosecuting attorney, the information satisfied him that Tanner was not considered by the hospital to be an incompetent person and further convinced him that there was no "reasonable cause" to believe that the accused was incompetent to stand trial. It does not seem contrary to the statute that misgivings aroused by suspicious circumstances regarding the mental competency of an accused, may be allayed by the kind of precautions undertaken by the United States Attorney. Albeit the prosecutor must not attempt to make the determination of competency, some credible basis must exist before there is "reasonable cause" which would compel him to request a 4244 examination. The facts of this case do not provide that kind of foundation. *Cf.* Meador v. United States, 332 F.2d 935 (9th Cir. 1964).

■ Before sentencing Tanner, the district court was cognizant of his confinement in a mental institution and excape therefrom. Under the subtitle of mental and emotional health, the presentence report stated that the defendant had in fact attempted suicide by slashing his wrists and that he was sent to a mental hospital for these acts. Moreover, it was undetermined, according to the report, whether the death attempt was real or merely a facade to facilitate an escape. Presented with these facts, and in the absence of any contemporary psychiatric reports to alleviate the obvious implications of Tanner's actions, it seems that out of an abundance of caution the trial court should have called for a section 4244 examination. Ruebush v. United States, 206 F.2d 810 (10th Cir. 1953).

■ We do not think, however, that the failure of the trial court to order a 4244 psychiatric examination necessarily requires a vacation of the sentence. The conviction and sentence were void only if, in fact, Tanner was mentally incompetent to stand trial. We have held that under certain circumstances a district court may, upon the basis of a 2255 evidentiary hearing, contemplate the earlier mental competence of an accused. Crail v. United States, 430 F.2d 459 (10th Cir. 1970); Arnold v. United States, 432 F.2d 871 (10th Cir. 1970). On the basis of our analysis of Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) and Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), in Crail, supra, it appears that this trial court was fully justified in retrospectively deciding appellant's mental competency to stand trial. And after a careful study of the entire record and all documents contained therein, we conclude that the finding of mental competence at plea time was not clearly erroneous. Arnold v. United States, 432 F.2d 871 (10th Cir. 1970); Crail v. United States, 430 F.2d 459 (10th Cir. 1970); Martinez v. United States, 423 F.2d 479 (10th Cir. 1970).

The proceedings before the district court during 1962 do not disclose a hint of mental incompetence. Tanner conversed intelligently with the court, giving positive indications that he understood the charges facing him, and affirmatively reciting that he had spoken to and was satisfied with appointed counsel. In brief, the accused responded intelligently to court inquiries—saying more than the usual "yes" or "no" to form questions—and presented the appearance of a capable person.

At the evidentiary hearing, appellant's 1962 trial counsel testified that he explained the Dyer Act charge and its penalties. Tanner said he knew what the charge was since he had a prior Dyer Act conviction; he knew the penalty and understood the reading of the information. The accused discussed the facts of the information with counsel and made his own decision to plead guilty. At no time did Tanner manifest bizarre or unusual behavior which should have led his lawyer to request a 4244 examination. In fact, the lawyer observed that the accused gave the distinct impression of being very competent, and capable of

standing trial. One particularly noteworthy piece of information gleaned was that Tanner confessed to his lawyer that he considered himself to be somewhat of an escape artist. And that he had slashed his wrists so he would be sent to Vinita where he thought he could escape.

The escape record of Tanner is indeed impressive. As a young man in the Marine Corps, appellant escaped from the brig. Then in May, 1962, appellant successfully liberated himself from an Oklahoma county jail by sawing through two bars and bending a third. He was apprehended and returned to the county jail where he escaped on July 21, 1962, by sliding through a window and lowering himself to the ground with a rope made from a mattress cover. He was caught as he touched the ground and returned to another cell where he slashed his arm. After being sent to Vinita, Tanner again freed himself by breaking away from an attendant while en route to the dentist's office. Thereafter he was picked up and charged on the instant Dyer Act violation. Even as he awaited sentencing on that charge, he successfully escaped from the Sedgwick County, Kansas jail. Thus, appellant's proclivity for escape is well documented.

Several of the psychiatric reports from examinations made just prior to Tanner's arrest, were introduced at the hearing. The unanimous diagnosis resulting from examinations and reports made in June, July, August and September of 1962, concluded that Tanner was suffering from a sociopathic personality disturbance, antisocial type, but that he was not psychotic. And, he was analyzed as mentally competent in that he knew right from wrong and was able to aid in his own defense.[1]

Four doctors testified during the hearing. Although this psychiatric testimony was divergent on collateral issues, all of the experts generally agreed that based upon contemporaneous psychiatric examinations, the appellant was mentally competent to stand trial in 1962. That is, he could cooperate with counsel and comprehend the proceedings against him.[2]

---

1. Relevant excerpts from official Hospital correspondence and memoranda are as follows:
   "We have arrived at a diagnosis of sociopathic personality disturbance, antisocial type. The patient is considered to be mentally competent, he knows right from wrong and can aid in his own defense. * * * According to Oklahoma Law the patient is mentally competent." Letter of June 29, 1962, from the Superintendent, State Hospital, Vinita, Oklahoma, to Judge Doty, Washington County, Oklahoma.
   "This patient's condition hasn't changed any so far as I can determine, over what the Staff found when we previously evaluated him. I don't think this patient really wants to take his life, in fact he admits that he doesn't want to take his life. It seems as though he used this as a means of trying to communicate the idea that he doesn't want to go to the penitentiary.
   "* * * [H]e knows right from wrong, he is responsible for his behavior, etc.
   "I would suggest a diagnosis of Sociopathic Personality Disturbance, Antisocial Reaction * * *." Psychological Evaluation, July 30, 1962, Chief Psychologist, State Hospital, Vinita, Oklahoma.
   "Mr. Tanner was evaluated further on this date since he was returned to the hospital for re-evaluation on July 24, 1962, after two attempts to escape from jail on a suicide attempt. On evaluation at this time, there is no essential change in the patient's condition, during his previous admission. There is no evidence of delusions or hallucinations. The patient knows right from wrong and is capable of aiding in his own defense.
   "Diagnosis: Sociopathic personality disturbance, antisocial reaction." Diagnostic Staff Note, August 8, 1962, Superintendent, Oklahoma State Hospital, Vinita, Oklahoma.
   "Further evaluation on this case did not reveal him [Tanner] to be psychotic. Final diagnosis remains Sociopathic personality disturbance, antisocial reaction. He knows right from wrong and is capable of aiding in his own defense." Letter of September 10, 1962, from the Superintendent, State Hospital, Vinita, Oklahoma, to Judge Doty, Washington County, Oklahoma.

2. 18 U.S.C. § 4244. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

The evidence considered by the trial court was reliable. The psychiatric examinations conducted just prior to the time Tanner pleaded guilty provided no basis for concluding that the accused was mentally incompetent to stand trial. The record of the proceedings before the district court in 1962 gives absolutely no notice that appellant was in any manner mentally incompetent. And the analysis made by the four doctors completely negatives any claim of mental incompetency at plea time. In addition, the psychiatric evaluations of the arm slashing incidents abjures suicidal tendencies. And the trial lawyer's statements revealing Tanner's confession that he cut himself only to facilitate an escape, coupled with his proven knack for escape, convinces this court that these incidents were not evidence of mental incompetence at plea time.

Finally, appellant argues that he was unconstitutionally denied his right to be present at the 2255 hearing. On September 11, 1969, Tanner was present at the evidentiary hearing and he then gave his testimony as did one other witness. However, upon the movant's request, the hearing was continued until February 2, 1970, to allow Tanner to draw up a list of witnesses to testify in his behalf. At the subsequent hearing, he was represented by able counsel, although the movant was not present.

■ The language of section 2255 reads that a "court may entertain and determine such motion without requiring the production of the prisoner at the hearing." This language "recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner." Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962). We agree with the district court that having offered his own testimony, Tanner's presence at the evidentiary hearing was not critical to the ultimate determination of the issue, thus his presence was not required.

Affirmed.