**Russell Lee HAYES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. H–77–186.**

United States District Court, S. D. Texas, Houston Division.

March 6, 1979.

Russell Lee Hayes, pro se.

Arthur Amdur, James R. Gough, Asst. U. S. Attys., Houston, Tex., for defendant.

## MEMORANDUM OPINION AND FINDINGS OF FACT

COWAN, District Judge.

### I. *The Issue and Coram Nobis Generally*

The principal issue in this *coram nobis* proceeding is whether the plaintiff, Russell Lee Hayes, at the time of his trial in February, 1957, was mentally competent to stand trial. The United States' counterclaim raises the issue of whether Mr. Hayes has abused the writ. The undersigned, on the basis of a full factual record, has determined that Hayes was fully competent and that he has grossly abused the writ.

*Coram nobis* is available as a remedy for setting aside a constitutionally infirm criminal judgment even though the sentence imposed has been served. In fact, *coram nobis* normally lies only when the movant is no longer in federal custody. See *Correa-Negron v. United States,* 473 F.2d 684, 685 (5th Cir. 1973); *United States v. Brown,* 413 F.2d 878 (9th Cir. 1969). *Coram nobis* is not specifically authorized by any statute enacted by Congress though it was available at common law to correct errors of fact. The courts derive their power to grant such a remedy from the all-writs section of the Judicial Code, 28 U.S.C. § 1651(a). See *United States v. Morgan,* 346 U.S. 502, 507, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *Cline v. United States,* 453 F.2d 873 (5th Cir. 1972). Despite express abolition of *coram nobis* relief in federal civil actions under Federal Rules of Civil Procedure, Rule 60(b), it is still available with respect to criminal convictions. *United States v. Morgan, supra. Coram nobis* is only available to correct errors of the most fundamental character. *Id.*

### II. *Historical Background*

The files and records in petitioner's prior cases are significant. They are summarized here in the hope that they may save some future judge the labor of retracing Hayes' post-conviction legal efforts.

On March 8, 1957, before the Honorable Joe Ingraham, Russell Lee Hayes was found guilty of unlawfully preparing and submitting false income tax returns in violation of 26 U.S.C. § 7207 and making fraudulent claims against the United States in violation of 18 U.S.C. § 287; and he was

sentenced to a total of six years' imprisonment.

The first motion for relief was entered April 1, 1958. Hayes claimed that there was "not probable cause for believing the existence of the grounds on which the warrant was issued," and that his conviction was based on an IRS conspiracy. The motion was denied by Judge Ingraham. No appeal was taken.

On May 7, 1958, Hayes moved to vacate sentence under 28 U.S.C. § 2255 and again raised the warrant issue in claiming that government agents entrapped him by planting government checks in his mail box and listing the checks on a search warrant as having been stolen. For the first time, Hayes made assertions regarding his appointed counsel. The motion was denied by Judge Ingraham. Subsequently, the district court denied Hayes' application for leave to appeal in forma pauperis on the ground that the appeal was without merit and was not taken in good faith. On appeal, the district court's judgment was upheld and the defendant's appeal was dismissed on the finding by the Fifth Circuit Court of Appeals that the issues presented had no merit, and the appeal was frivolous. *Hayes v. United States*, 258 F.2d 400 (5th Cir. 1958), cert. denied, 358 U.S. 856, 79 S.Ct. 87, 3 L.Ed.2d 89 (1958).

On April 22, 1959, Hayes filed a third motion raising substantially the same issues raised in the two prior motions. The motion was denied by Judge Ingraham, and no appeal was taken.

In February of 1963, Hayes filed a fourth motion to vacate judgment under 28 U.S.C. § 2255 on the grounds that he was denied due process by the action of the trial court in forcing a court-appointed attorney on him when he had counsel of his own choosing. The record in this proceeding demonstrates the falsity of Hayes' allegations in that proceeding. On April 10, 1963, the district court dismissed the motion on the basis that the prior denial of defendant's motions and affirmance by the Fifth Circuit was controlling. Hayes appealed in forma pauperis from that dismissal. The Fifth

Circuit held that since res judicata, as such, has no application in § 2255 proceedings [under *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)], the appellate court's dismissal of appellant's previous appeal was of no legal consequence and, therefore, the district court would be required to hold a hearing to resolve the factual issue raised. *Hayes v. United States*, 323 F.2d 954 (5th Cir. 1963). The case was remanded to the district court. Shortly thereafter, Hayes filed an affidavit of prejudice against Judge Ingraham. As a result, the case was transferred to the Honorable Allen B. Hannay.

Subsequently, the United States filed a suggestion of mootness which informed the Fifth Circuit that Hayes was no longer in custody. The circuit court noted that this was a factual issue for the district court to determine upon the November 1, 1963 remand. *Hayes v. United States*, 325 F.2d 1022 (5th Cir. 1964).

On November 8, 1965, the district court, speaking through the Honorable Allen B. Hannay, denied relief to Hayes on grounds of mootness since Hayes had been unconditionally released from custody and thus could not rely on 28 U.S.C. § 2255. *United States v. Hayes*, 293 F.Supp. 625 (S.D.Tex. 1965). The district court did, however, go forward on alternative grounds to reach the substantive issues of Hayes' motion, and held that the "[p]etitioner's contentions are without support in law or in fact." *Id.* at 627. No appeal was taken.

In 1968, Hayes filed a petition (his fifth), in the nature of a writ of *coram nobis* seeking to set aside his conviction on the grounds that the district judge forced court-appointed counsel on him when he had already retained counsel. *Hayes v. United States*, 293 F.Supp. 628 (S.D.Tex. 1968). The district court, Judge Hannay, denied the petition because the court had given full judicial consideration to these same substantive issues in the earlier cause of *United States v. Hayes*, 293 F.Supp. 625 (S.D.Tex.1964). On appeal, the Fifth Circuit affirmed the district court's denial of the writ of *coram nobis*. *Hayes v. United*

*States,* 416 F.2d 23 (5th Cir. 1969). The record in this proceeding reveals the correctness of those decisions because it is manifest that no attorney was "forced" on Hayes and that he cooperated fully with his court-appointed attorney and participated actively in his own defense.

At this stage, the case was transferred to the docket of the Honorable Ben C. Connally. On February 1, 1972, Hayes filed his sixth motion (a writ of *coram nobis*) to set aside his 1957 conviction. Hayes asserted that (1) his appointed counsel was incompetent; (2) that he was denied due process of law by the action of the trial judge in appointing counsel in his behalf since he had himself retained counsel and never waived his right to be represented by same; and (3) that the arrest and search warrant issued incident thereto were illegal since the warrant was issued on a falsely sworn affidavit and without sufficient probable cause. Hayes claimed that these factors were part of a conspiracy by the IRS to "frame" him for a crime he did not commit. On February 6, 1973, Judge Connally entered a memorandum and order dismissing Hayes' motion on the merits and therein stated that the court would not entertain further motions of this nature by the petitioner. *Hayes v. United States.* No. 72–H–136 (S.D.Tex., filed February 1, 1972). Hayes began the appeal procedure, but his appeal was dismissed for want of prosecution on May 15, 1973.

On July 30, 1975, Hayes filed his seventh motion to set aside his 1957 conviction. His grounds were: (1) denial of a right of self-representation at trial, and (2) the district court was without jurisdiction to try, convict or sentence him. On October 29, 1975, Judge Connally filed a memorandum/order and judgment dismissing Hayes' motion and taxing him with the costs of commencement of the action. *Hayes v. United States,* No. 75–H–1310 (S.D.Tex., filed July 30, 1975). The decision was appealed, and the dismissal affirmed by the Fifth Circuit on May 4, 1976, in a per curiam decision. *Hayes v. United States,* No. 75–4220 summary calendar (5th Cir. 1976).

The Honorable Ben C. Connally died, and the case was transferred to the Honorable Woodrow Seals. On February 1, 1977, Hayes filed his eighth motion to set aside the 1957 judgment of conviction. The basis for such motion was that the defendant Hayes was incompetent to stand trial at the time of his 1957 criminal trial. On September 19, 1977, Judge Seals denied Hayes' motion, and on September 28, 1977, Hayes filed a motion for rehearing. On October 21, 1977, the case was transferred to the docket of the undersigned, who thereafter set aside the earlier order of Judge Seals. On April 4, 1978, a full evidentiary hearing was ordered so as to resolve the question of competency to stand trial in 1957. This matter came on to be heard in this court on January 18, and 22, 1979.

III. *Legal Background*

A. *Competency Question during 1957 Trial*

In the criminal case of 1957, Judge Hannay did not require Hayes to undergo a mental examination to determine his competency to stand trial. The prosecutor in that case had moved for such an examination under 18 U.S.C. § 4244 which states:

> Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, . . . Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused . . . to be examined . . . If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing . . . and make a finding with respect thereto.

█ The trial court granted the prosecution's motion for a mental examination, but reversed itself upon Hayes' opposition to such an examination. It is the law in this circuit (as in most) that once the court has knowledge, by motion or otherwise, that there are grounds for reasonable cause to believe that the accused may be incompetent to stand trial, the court has a mandatory duty to grant a § 4244 examination. See *United States v. McEachern*, 465 F.2d 833 (5th Cir. 1972), cert. denied 409 U.S. 1043, 93 S.Ct. 539, 34 L.Ed.2d 494 (1972). However, the court may deny such motion if the court finds the motion frivolous, not made on the basis of reasonable cause or not made in good faith. *Rice v. United States*, 420 F.2d 863 (5th Cir. 1969); *United States v. Morgan*, 559 F.2d 397 (5th Cir. 1977).

█ Once the trial court finds that there should be an examination, as detailed above, a defendant may not waive his right to the competency hearing. *Featherston v. Clark*, 293 F.Supp. 508, 517 (W.D.Tex.1969), aff'd 418 F.2d 582 (5th Cir. 1969), cert. denied, 397 U.S. 937 (1970). The rationale behind this rule was expressed by the Supreme Court in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966): "[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." So, the question boils down to whether a defendant was in fact competent at the time of his trial. Even if the issue of competency were never raised before judgment, a conviction may be attacked collaterally on the grounds that the defendant was not mentally competent at the time. *Id.* Even if Judge Ingraham's decision were incorrect, or if the issue of competency had never been raised before judgment, it would not be controlling in the case at bar.

█ The conviction of an accused while he is mentally incompetent is a violation of due process. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). However, the failure to have the accused examined or hold a hearing on the issue of competency does not necessarily require reversal of the conviction, even where the court failed to follow the procedures established in § 4244. *United States v. Makris*, 483 F.2d 1082, 1091 (5th Cir. 1973); *Tanner v. United States*, 434 F.2d 260 (10th Cir. 1970).

### B. *Meaningfulness of Nunc Pro Tunc Competency Hearing*

█ The conviction of an accused should be set aside only when it can be shown that he was in fact incompetent at the time of trial or where the court concludes that a "meaningful hearing" cannot be conducted in the post-conviction proceedings. *Rose v. United States*, 513 F.2d 1251 (8th Cir. 1975); *White v. United States*, 470 F.2d 727 (5th Cir. 1972); *Tanner v. United States*, 434 F.2d 260 (10th Cir. 1960). In the instant case, a "meaningful" retrospective hearing was indeed and has been possible to determine the question of competency because much contemporaneous probative evidence is available. Nunc pro tunc substitute competency hearings are not favored, but where there exists sufficient data to guarantee reliability, such hearings have been repeatedly sanctioned. *Lee v. Alabama*, 386 F.2d 97 (5th Cir. 1967); *United States v. Makris*, 535 F.2d 899 (5th Cir. 1976).

### C. *Burden of Proof*

In the case of *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), the Supreme Court held that federal court could entertain motions in the nature of the extraordinary writ of *coram nobis*. In so holding, the court went on to say: "It is presumed the proceedings were correct and the burden rests on the accused to show otherwise." *Id.* at 512, 74 S.Ct. at 253.

A writ of *coram nobis* is an attempt to collaterally attack a judgment. In *Bruce v. Estelle*, 536 F.2d 1051 (5th Cir. 1976), the court held that the burden of proof is on the accused in a collateral attack, and he must demonstrate his incompetency to stand trial by a preponderance of the evidence. The

pertinent section of the *Bruce v. Estelle* case states the following:

> [T]he burden of proving a constitutional violation ordinarily lies with the petitioner in a habeas proceeding. Unless he proves the facts necessary to establish his claim to relief *by a preponderance of the evidence,* the collateral attack will fail. Where the asserted found for relief is incompetency at trial, the habeas court will require a certain quantum of evidence before it even entertains the claim. (Emphasis added)

*Id.* at 1058.

Although the *Bruce* case is a habeas and not a *coram nobis* case, the same burden of proof applied to both. *Mitchell v. United States,* 482 F.2d 289, 295, n.5 (5th Cir. 1973). The prosecution has the burden in direct appeals, while the burden is on the accused in habeas and *coram nobis* proceedings. In a *coram nobis* action, there is a presumption of regularity when a criminal judgment is assailed. *Bruno v. United States,* 474 F.2d 1261 (8th Cir. 1973); *Ybarra v. United States,* 461 F.2d 1195 (9th Cir. 1972); *United States v. Marcello,* 210 F.Supp. 892 (E.D.La.1962), aff'd 328 F.2d 961 (5th Cir. 1964).

In a *coram nobis* case, the burden of proof is on the convicted and the quantum of proof is "preponderance of the evidence." *Dwyer v. State,* 151 Me. 382, 120 A.2d 276 (1956); however, as will be pointed out in more detail below, even if the burden of proof were placed upon the government to prove that Russell Lee Hayes was competent at the time of his trial in February 1957, the government would, on the facts of this case, have met that burden. The evidence produced at the hearing of January 1979 establishes persuasively, and perhaps even conclusively, that Hayes was competent at the time of his trial and at all other material times.

### D. Legal Standard for Competency

The ultimate focus in a retrospective competency hearing must be whether at the time of trial the accused: (1) had sufficient present ability to consult with his attorney with a reasonable degree of rational understanding; and (2) whether he had a rational as well as factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *United States v. Makris,* 535 F.2d 899 (5th Cir. 1976); *Bruce v. Estelle,* 536 F.2d 1051 (5th Cir. 1976).

### E. Procedure for Determining Competency

The Fifth Circuit in *Bruce v. Estelle, supra,* has outlined exactly how the trial court should approach the competency question in a nunc pro tunc hearing.

### IV. Factual Background and Findings of Fact

Russell Lee Hayes was indicted on November 5, 1956, on eight counts, for preparing and submitting false income tax returns in violation of 26 U.S.C. § 7207 and making fraudulent claims against the United States in violation of 18 U.S.C. § 287.

In December of 1956, after his indictment and before trial, Russell Hayes voluntarily presented himself for treatment to the Veterans Administration ("VA") Hospital where he was examined and treated by competent psychologists and psychiatrists. The records and records of this December 1956 confinement appear in this record. After a thorough evaluation, the VA doctors concluded that Hayes, while understandably depressed and upset because of his legal and marital difficulties, was competent. More persuasive than the doctor's conclusions, however, is the fact that it is clearly revealed from the record that Hayes was able to give the doctors at the VA hospital a clear, rational, detailed history. This history and the other medical records in evidence indicate that Hayes on at least two occasions, had attempted to manipulate people close to him by feigning suicide attempts. It appears that shortly before voluntarily presenting himself to the VA hospital, he had feigned a suicide attempt by parking his car close to a railroad track and

either losing or pretending to lose consciousness. No actual suicide had been attempted, or so it would certainly appear from the records and the history Hayes gave to the VA doctors.

The United States Attorney's office received word that Hayes had attempted suicide and was confined in the mental ward of the VA hospital. In an abundance of precaution, the prosecutor handling the case, Fred Hartmann (a veteran, highly competent prosecutor) filed a motion with Judge Hannay requesting a medical examination at the federal facility at Springfield, Ohio. Pursuant to that order, federal marshals took custody of Hayes at the VA hospital and confined him in the Harris County jail pending his examination in the federal medical facility at Springfield, Ohio.

Hayes, who was completely competent according to the records of the VA, did not wish to go to Springfield to be examined. Hayes' wife employed attorney Carl Williams for the limited purpose of obtaining Hayes' release and avoiding the forced transportation to Springfield and the accompanying mental examination. Williams, in addition to being retained by Hayes' wife, also knew Hayes. Williams and Hayes officed in the same building and were at least casually acquainted.

Williams, an experienced, mature attorney, was however not officially a member of the bar of the Southern District of Texas. Williams interviewed Hayes. On the basis of his prior knowledge of Hayes and his interview, Williams concluded that Hayes was fully competent to stand trial, and filed a motion with Judge Hannay to release Hayes and avoid the transportation to Springfield and the mental examination contemplated there. Williams conferred with Hartmann, the prosecutor handling the case. On the basis of his contact with Hayes, Hartmann believed him to be fully competent. Hartmann and Williams therefore joined in a recommendation to Judge Hannay that Hayes be released; and he was released.

Hartmann's belief that Hayes was fully competent to stand trial and participate in his own defense arose from the following circumstance: While Hayes was under investigation and before he had been indicted, Hayes approached Hartmann, told Hartmann that he wished to appear before the grand jury and state his side of the case before he was indicted. Hartmann indicated to Hayes that he had no absolute right to appear before the grand jury, but that he, Hartmann, would notify Hayes when the matter was presented to the grand jury, and if the grand jury wanted to hear Hayes, Hayes could testify. As matters occurred, Hayes was indicted by a grand jury in Corpus Christi. Either because he did not wish to appear or because of some failure in communication, Hayes did not actually appear before the grand jury. After he had been indicted, Hayes again visited Hartmann and reprimanded him for failure to live up to what Hayes regarded as his agreement to notify him when the grand jury would consider his case. Based upon these conversations with Hayes, in which Hayes obviously demonstrated a full understanding of the nature of the charges against him, and an ability to participate in the defense, Hartmann was totally convinced of Hayes' competency.

Hartmann and Williams thus joined in a recommendation to Judge Hannay that the previous order requiring Hayes' confinement and transportation to Springfield for mental examination be set aside. Judge Hannay, on the basis of the recommendation of counsel did set that order aside.

 While Hayes, if incompetent, would have been unable to waive his right to a mental examination to determine his competency, the evidence before the court reveals persuasively, if not conclusively, that Hayes was fully competent and thus, if he had any right to a mental examination at that time, he knowingly and intentionally waived it because he was fully competent and capable of waiving any right.

Although afforded an opportunity to do so in this proceeding, Hayes never testified under oath. The undersigned believes that Hayes fully understands and knows the

facts as recited above are true and did not testify because he was unwilling to subject himself to the hazards of a perjury indictment.

At Hayes' arraignment, Williams appeared and explained to Judge Ingraham that he was not a member of the bar of the Southern District of Texas and had been granted leave by Judge Hannay to appear for the limited purpose of obtaining Hayes' release from the Harris County jail avoiding his transportation to Springfield, and Judge Ingraham allowed Williams to withdraw from further responsibility in the case and appointed Clyde Gordon, a member of the bar of the Southern District of Texas to represent Hayes.

Mr. Gordon is a skilled, highly competent, conscientious attorney who has testified in this proceeding. Gordon interviewed Hayes in detail, found him to be responsive and completely able to explain his version of the facts and participate intelligently in his defense.

Hayes' case was tried on February 21, 22 and 23, 1957.

Hayes testified in detail at his trial. The testimony and trial transcript is contained in the record. The transcript which has been authenticated by the sworn testimony of Mr. Hartmann, the prosecutor who participated in the trial of the case, reveals that Hayes testified articulately.

At trial, the government presented an extremely persuasive case against Hayes. Evidence was presented to the effect that Hayes had stolen the W-2 forms from a table in the [dockworkers] union offices, and that he had signed and filed the individual tax returns with the intent of collecting the refund checks for himself. The dockworkers, whose returns Hayes had filed, testified that they did not know Hayes; that they had not hired him to file their returns; that they had not hired a man named Tom Jenkins to file their returns; and that they had in fact never met or heard of Jenkins. At trial, when the government produced a Mr. Tom Jenkins who worked at the waterfront, Hayes indicated that this was not the same man whom he had dealt with regarding the W-2 forms. Evidence was presented that on each return, the signature in the space for the person who prepared the return was that of Russell Lee Hayes using his right hand, and that the space containing the purported signature of each taxpayer was the lefthand signature of Hayes. In closing argument, the government brought out numerous instances in which Hayes had changed his testimony.

Hayes testified at his trial to a set of events which, if believed, would have been consistent with his innocence. On direct examination, Hayes testified that he had gone into the business of preparing income tax returns for individuals; that a man named Tom Jenkins had contacted numerous dockworkers and procured 35 customers for Hayes and obtained W-2 forms from each for Hayes to use in preparing their tax returns. Hayes was to get a $5 fee per form, and Jenkins was to get a $2 finder's fee from Hayes. Hayes prepared the returns from the W-2 forms, but put his own home address on each tax form so that the tax refunds would be sent to his home. Hayes testified that the reason for having the refunds sent to him rather than to each taxpayer, was so that he could be assured of getting his $5 fee. He intended to collect his fee when he delivered the refund checks to each dockworker. The tax returns were filed by Hayes. Twenty-eight refund checks were sent to Hayes' address. Upon Hayes' taking delivery of the checks, the U. S. Government seized said checks and proceeded to take necessary steps to indict Mr. Hayes.

The jury, as was its privilege, rejected Hayes' testimony and convicted him.

██ While the jury disbelieved Hayes, there is nothing in his testimony to indicate that he was disoriented, suffering from delusions, or in any degree mentally incompetent.

During the term of his sentence, Hayes was evaluated on numerous occasions by competent psychologists, psychiatrists and other clinical practitioners. Many of the

188

records generated during Hayes' period of confinement in various federal institutions are identified in this record as Plaintiff's Exh. 6 and Defendant's Exh. 1. In addition, the court has before it the testimony of Dr. Johnstone, who has evaluated these records and given testimony concerning their significance and his opinion as to Hayes' competency based upon these records. While some of the doctors who saw Hayes during his period of confinement in the federal prison system believed that he had a diagnosable mental illness, i. e., paranoid schizophrenia, the consensus of the physicians who examined him was otherwise. In addition, the most persuasive aspect of these records is not necessarily the opinions of the doctors but the fact that they reveal conclusively that on all occasions when he was examined, Hayes was able to describe his history and his situation in an articulate, well-oriented, apparently accurate and cohesive manner with an understanding of where he was, why he was there, and what he was doing. There is absolutely no evidence in these detailed records of delusions, hallucinations or any inability to perceive reality accurately.

Hayes served his sentence, was released and insofar as this record reveals, has functioned in society without additional difficulty up to the present time. There is testimony from witnesses Hartmann and Williams that Hayes' general demeanor and conduct at the hearing of January 18, 1979 is basically consistent with his demeanor and conduct on the occasions when they knew him and interacted with him in 1957.

This record and his conduct before this court reveal that Russell Lee Hayes is an articulate man. There is absolutely no evidence at any time that he has been unable to perceive reality. If this court, or any court, were to hold that Mr. Hayes was not competent to stand trial in February 1957, then no person who ever committed a crime could be tried, because virtually every person who commits a crime has had some difficulty in adjusting to the problem of living with other people and has reflected some anxiety and depression concerning his legal difficulties.

## V. *Abuse of Writs Issue*

The government has raised the issue of abuse of writs and has asked that *coram nobis* be denied on this basis alone without reaching the merits of the case. A review of the law in this regard would be appropriate. A good summary statement on *coram nobis* proceedings is found in *Rener v. United States,* 475 F.2d 125 (5th Cir. 1973): "The writ of error *coram nobis* should only be allowed to remedy manifest injustice. . . . Its purpose is not to burden courts with the rendition of 'futile decrees'." *Id.* at 127.

The all-writs section, 28 U.S.C. § 1651(a), is the source for issuing writs of *coram nobis.* Habeas corpus "in custody" relief is covered by 28 U.S.C. § 2255 and § 2244. Although these two writs derive their potency from two different statutes, the courts in at least several instances have looked to the *habeas* rules and cases in developing and applying *coram nobis* principles, e. g., see *Mitchell v. United States, supra.* In dealing with the issue of successive collateral attacks on a judgment, this court has reviewed what other courts have done when the issue is raised in *habeas* cases. This court sees no reason for not applying the same guidelines to *coram nobis* cases since both writs are vehicles for collaterally attacking former judgments (the primary difference being whether the movant was "in custody" at the time of filing).

In the case of *Brager v. United States,* 569 F.2d 399 (5th Cir. 1978), the district court had dismissed the movants habeas petition for abuse of process. The Fifth Circuit in upholding the district court stated, "The issuance of a writ of habeas corpus is governed by equitable principles and, therefore, a petitioner may, by his own bad faith, preclude the collateral relief sought." *Id.* at 400. The court concluded by saying that, ". . . The petitioner's pattern of interrelated litigation indicates calculated exploitation of the collateral attack process afforded . . ." *Id.* at 401.

The Supreme Court has placed the determination of abuse of process within the sound discretion of the trial judges:

> Theirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits.

*Sanders v. United States,* 373 U.S. 1, 18–19, 83 S.Ct. 1068, 1079, 10 L.Ed.2d 148 (1963).

The *Sanders* case is instructive on several fronts. The court set up a number of guidelines in determining abuse of writs. The court held that controlling weight may be given to a denial of a prior application for federal collateral relief only if the same ground presented in the subsequent application was determined adversely to the applicant on a prior application, if the prior determination was on the merits, and if the ends of justice would not be served by reaching the merits of the subsequent application. See 28 U.S.C. § 2244 and annotations. If a ground was rejected on the merits in a prior application, the burden is on the applicant to show that the ends of justice would be served by permitting redetermination of the ground. However, even if a different ground is presented in a subsequent application—as in the case at bar—consideration of the merits of the new application can be avoided if there has been an abuse of the writ.

The Supreme Court found abuse of the writ in the early case of *Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924). There, the movant in his first application for *habeas corpus* had two grounds of which he was aware to use as a basis for his release. He offered no proof on the second ground, and relief was denied on the first ground. Later, the same movant filed a second application relying exclusively on the second ground. The district court held that the second petition was an abuse of the writ. The Supreme Court upheld the district court saying:

> The petitioner had full opportunity to offer proof of [the second ground] at the hearing on the first petition, and, if he

was intending to rely on that ground, good faith required that he produce the proof then. To reserve the proof for use in attempting to support a later petition, if the first failed, was to make an abusive use of the writ of habeas corpus. No reason for not presenting the proof at the outset is offered. It has not been embodied in the record, but what is said of it there and in the briefs shows that it was *accessible all the time.* (Emphasis added)

*Id.* at 241, 44 S.Ct., at 525.

Similarly, if a person who on a prior motion under either § 2255 or *coram nobis,* has withheld a known ground for relief, he need not be heard if he asserts that ground in a successive motion; his action is inequitable—an abuse of the remedy—and the court may in its discretion deny him a hearing. See *Sanders v. United States, supra,* 373 U.S., at 10, 83 S.Ct. 1068.

In the case at bar, this court has allowed a full evidentiary hearing on the question of competency. Hayes, here in his most recent *coram nobis* motion, raised a new ground. Notwithstanding, this court could have determined that this "new ground" was accessible at all times for Hayes to have raised in any one of his previous seven post-conviction proceedings, and thereby denied reaching the merits. Without expressing an opinion on that point, this court, out of an abundance of caution, exercised its discretion in favor of entertaining Hayes' motion and thereby reached the merits.

In reviewing the entire record and Hayes' litigious history, this court cannot imagine any old or new grounds that could be raised by Hayes in a subsequent *coram nobis* proceeding which would not constitute an abuse of the writ. Over the many years since his 1957 trial, Hayes has been a prolific litigant. Hayes, as a pro se plaintiff, has acquired an extensive working knowledge of the substantive law and procedural rules in the area of his litigation. Thousands of hours of time have been expended by countless civil servants and judges on Hayes' repetitive litigation. Should Mr. Hayes file another motion for post-conviction relief in the future, there is a high degree of proba-

bility that this court will simply have to conclude as did the Fifth Circuit in *Brager v. United States,* 569 F.2d 399, at 401 (5th Cir. 1978), that ". . . the petitioner's pattern of interrelated litigation indicates a calculated exploitation of the collateral attack process."

### VI. *Conclusion*

As detailed above, this is the eighth motion for post-conviction relief filed in the Southern District of Texas by Hayes. This case has had the careful attention of five United States District Judges from this District, and of the Court of Appeals on several occasions. Without exception, the allegations have been found to be without merit. This court will not entertain further motions of this nature by this petitioner.

For the reasons stated herein, judgment will be entered for the defendant.